## The Commonwealth *against* The County Commissioners.

*Philadelphia, Wednesday, July 7.*

If county commissioners appoint a treasurer, not with the free exercise of their judgments, but by drawing cuts to decide which of two of them shall give up his nomination to the other, the appointment is illegal, and the commissioners may make another appointment.

IN this case a rule was granted upon the commissioners of *Philadelphia* county, to shew cause why a *mandamus* should not issue, commanding them to grant to *Liberty Browne* a certificate of his appointment to the office of treasurer.

The commissioners severed in their return; two of them, *Jacob Fitler* and *Isaac Johnson*, shewed for cause, that on the day fixed for the appointment of treasurer, all the commissioners attended at their office, and all voted for different persons. After several unsuccessful efforts to produce unanimity, *Robert Taylor*, the third commissioner, proposed to

1813.

COMMON-
WEALTH
v.
COUNTY
COMMIS-
SIONERS.

*Johnson* to draw cuts, to determine which of their two can-
didates should be appointed, and with some hesitation *John-
son* acceded. *Taylor* drew the longest paper, and *Browne*,
the candidate of *Taylor*, was chosen; *Fitler* at the same time
declining any part in the transaction, but adhering to his
own candidate. The amount of security to be given by the
treasurer was then settled in a conference by all the com-
missioners, and a notice of the appointment was signed by
*Taylor* and *Johnson*, but not delivered, though it was made
known to *Browne*. On the next day two of the commission-
ers being ashamed of what had occurred, and *Johnson* re-
gretting his agency in it, proposed, and proceeded to, a new
appointment, when *Fitler* and *Johnson* voted for *Daniel
Groves*, and *Taylor*, though he put in no ballot, still de-
clared himself for *Browne*.

The return of *Taylor* differed from the other in two par-
ticulars. He alleged, 1, That he never consented to the second
election, but protested against it, and 2, That the drawing of
lots was not for the purpose of *electing*, but to decide which
of the two should *give up his man*.

*J. R. Ingersoll* for *Liberty Browne*, argued in favour of
the first appointment, and against the authority of the com-
missioners to make a second; and he referred to the act of
the 6th of *March* 1812, 5 *Smith's Laws* 310, to shew that
*Groves*, who was a member of the state legislature, was in-
eligible.

*Ingersoll* contra, contended that the first appointment
was illegal and void, that it was highly proper to make ano-
ther, and that whether *Groves* was capable of taking the
office, was immaterial upon this rule.

TILGHMAN C. J. The Court are of opinion that this is
an extremely clear case. It is at the same time a very im-
portant one, because it materially concerns the purity of elec-
tions or appointments; for the name is in this case of no mo-
ment. We should be sorry if the public supposed we could
have any doubt upon the subject. The law intended that the
appointment of county treasurer should be made by the judg-
ment of the commissioners, and it has been made by chance;

1813.

COMMON-
WEALTH
*v.*
COUNTY
COMMIS-
SIONERS.

for if the agreement was that chance should decide which of two candidates should be withdrawn, chance was to decide who should be the treasurer. If a jury were to settle their verdict by drawing lots, the Court, if they knew it, would set it aside; and the jury might be punished for their misconduct. We think the same of an appointment by the commissioners; and perhaps they would be liable to indictment for so improper an exercise of their official power. We therefore approve of the commissioners who reflected, and repented, and proceeded to a new appointment. Whether Mr. *Groves* is eligible to the office, it is not material at present to say; but we are very clear in refusing the *mandamus.*

PER CURIAM.        Rule discharged.

## The Commonwealth *against* The County Commissioners.